# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**United States of America,**

    **Plaintiff/Respondent,**

v.                                                         Case No. 07-20168-24-JWL
                                                           Case No. 12-2669-JWL

**Franklin Goodwin, Jr.,**

    **Defendant/Petitioner.**

## MEMORANDUM & ORDER

On February 1, 2008, Franklin Goodwin, Jr. was charged along with twenty-three other individuals in a 39-count superseding indictment. Pertinent to the motions presently pending in this case, Mr. Goodwin was charged with one count of conspiracy to manufacture, to possess with intent to distribute, or to distribute cocaine base and/or cocaine between January 2006 and November 27, 2007.

Generally, "the conspiracy involved Monterial Wesley and Shevel Foy pooling their money together to purchase large quantities of cocaine from Thomas Humphrey. Mr. Wesley and Mr. Foy then sold the cocaine to mid-level dealers, including Henry Grigsby, who sold it to street-level dealers like Mr. Goodwin." *United States v. Goodwin*, 433 Fed. Appx. 636, 637 (10th Cir. 2011). At trial, the government's evidence against Mr. Goodwin consisted, in part, of incriminating conversations intercepted from telephones belonging to Mr. Grigsby and Mr. Wesley, two of Mr. Goodwin's co-defendants. *See United States v. Foy*, 641 F.3d 455, 461 (10th Cir. 2011). These conversations revealed that Mr. Goodwin purchased or attempted to purchase from his co-defendants cocaine or crack cocaine on several occasions. The

government also introduced evidence that Mr. Goodwin had provided a statement to law enforcement officers in which he admitted to purchasing cocaine from Mr. Grigsby on several occasions. Mr. Grigsby testified that Mr. Goodwin purchased cocaine from him on several occasions and another co-defendant, Keenan Ringgold, testified that Mr. Goodwin purchased crack cocaine from him on several occasions.

A jury ultimately found Mr. Goodwin guilty of the conspiracy charge and the court sentenced Mr. Goodwin on the conspiracy charge to a mandatory minimum sentence of life imprisonment in light of an enhancement information filed by the government pursuant to 21 U.S.C. § 851 identifying two prior felony drug convictions. The Tenth Circuit subsequently affirmed Mr. Goodwin's conviction and sentence on the conspiracy charge. *Id*. at 643.

This matter is now before the court on three motions filed by Mr. Goodwin—a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 1480); a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c) (doc. 1470); and a motion for intake records (doc. 1542). As explained in more detail below, the court denies each of these motions as well as Mr. Goodwin's request for an evidentiary hearing.

**Motion to Vacate, Set Aside or Correct Sentence**

In his § 2255 petition, Mr. Goodwin asserts that he does not have two prior convictions for purposes of qualifying for § 841's mandatory life sentence and that, accordingly, the court sentenced him to a penalty in excess of the statutory maximum and acted in excess of its

authority by imposing a life sentence under § 841(b)(1)(A).  Mr. Goodwin also raises numerous claims of ineffective assistance of counsel.[1]  The court addresses each of these claims in turn.[2]

**Prior-Conviction Sentence Enhancement Under § 841(b)(1)(A)**

Mr. Goodwin contends that the convictions upon which the government relied to impose a mandatory life sentence were insufficient under 21 U.S.C. § 841(b)(1)(A).  Section 841(b)(1)(A) imposes a mandatory life sentence for any individual convicted under § 841(a) "after two or more prior convictions for a felony drug offense have become final." *Id.* § 841(b)(1)(A).  The record reflects that the first prior felony drug conviction arose out of Mr.

---

[1] In his petition, Mr. Goodwin expressly identifies six grounds for relief:  (1) that the court sentenced Mr. Goodwin in excess of the statutory maximum penalty because he does not qualify as a career offender; (2) that perjured testimony was presented at sentencing to establish that Mr. Goodwin is a career offender; (3) that his trial counsel was constitutionally deficient; (4) that his trial counsel, if not constitutionally deficient, must have been operating under a conflict of interest; (5) that the court exceeded its authority by imposing a life sentence based on invalid prior convictions; and (6) that his appellate counsel was constitutionally deficient.  The court has grouped these claims together by subject in resolving Mr. Goodwin's motion.

[2] In his reply brief, Mr. Goodwin raises several claims for the first time.  Because he raises these issues for the first time in his reply, the court need not address the claims.  Nonetheless, the court will briefly address the claims because they are easily resolved.  Mr. Goodwin contends that there was insufficient evidence to convict him of conspiracy—an issue that was decided by the Tenth Circuit and cannot be relitigated at this juncture in the absence of a change in the law.  *United States v. Chee*, 44 Fed. Appx. 289, 292 (10th Cir. 2002) (issues decided by Circuit on direct appeal cannot be considered on § 2255 collateral review without an intervening change in the law).  He contends that his *Miranda* rights were violated when he was questioned by law enforcement officers.  This argument was not presented on direct appeal and, because Mr. Goodwin does not demonstrate or even allege cause excusing his procedural default, Mr. Goodwin cannot assert the claim now.  *United States v. Mills*, 2013 WL 1443978, at *1 (10th Cir. Apr. 10, 2013).  Finally, he contends that his trial counsel should have filed a motion to suppress evidence seized during an allegedly unlawful search of his vehicle.  This claim is denied because his trial counsel, in fact, moved to suppress the evidence and the court denied the motion.

3

Goodwin's arrest in May 1998 for possession of cocaine with intent to sell and possession of marijuana and that the second conviction arose of out Mr. Goodwin's arrest in October 1999 for possession of cocaine. The record further shows that the "date of conviction" for both cases is the same—December 2, 1999—and the sentencing date for both cases is the same—March 20, 2000.

According to Mr. Goodwin, the charges in one of the underlying cases were dismissed and he was never convicted in that case. Mr. Goodwin raised this same argument in response to the Presentence Investigation Report. In a written objection to the finding of two prior felony drug convictions, Mr. Goodwin's counsel noted that his client, Mr. Goodwin, was "convinced" that one of the two cases was dismissed "based on his memory," but that counsel had not located any documents indicating a dismissal. Mr. Goodwin further objected to the finding of two prior convictions on the grounds that the defendant in one of the cases was a different Franklin Goodwin. After an evidentiary hearing on the identification issue and the admission of the journal entries of conviction, the court overruled the objection

In his motion to vacate, Mr. Goodwin again urges that the charges in one of the cases were dismissed and that he was never actually convicted. In support of his argument, he cites to "Exhibit A," but no such exhibit is attached to his motion and there is no evidence before the court suggesting that one of the cases was dismissed.[3] In fact, the evidence demonstrates that each case resulted in a conviction. Mr. Goodwin's confusion may stem from the fact that he

---

[3] In his motion, Mr. Goodwin asserts that the government knowingly presented the perjured testimony of Officer James Christie during Mr. Goodwin's sentencing. According to Mr. Goodwin, Officer Christie testified that Mr. Goodwin was "convicted" of possession of cocaine when, in fact, the charge was dismissed. The record in no way supports this argument.

was convicted in both cases on the same day and was sentenced in both cases on the same day. While these facts may have caused Mr. Goodwin to believe that only one case remained pending, the record reflects that both cases remained pending and resulted in separate convictions. *See United States v. Kelsor*, 665 F.3d 684, 700 (6th Cir. 2011) (two felony drug convictions properly counted as separate convictions where they arose from separate criminal episodes despite the fact that defendant was arrested for the offenses on the same day, convicted in both cases on the same day, and was sentenced for the convictions on the same day).

The court properly sentenced Mr. Goodwin to the statutory mandatory minimum life sentence under § 841(b)(1)(A) in light of Mr. Goodwin's two prior qualifying felony drug convictions.

**Ineffective Assistance of Counsel**

Mr. Goodwin raises more than 15 separate claims wherein he contends that the performance by trial and appellate counsel was deficient in violation of his Sixth Amendment right to counsel. "To establish ineffective assistance of counsel, a defendant must show 'that counsel's representation fell below an objective standard of reasonableness' and that he was prejudiced by the deficient performance." *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)).

The court begins with those claims that may be denied with minimal explanation in that Mr. Goodwin clearly cannot establish prejudice with respect to the claims or the claims are factually incorrect. He asserts that his trial counsel failed to adequately support a motion to exclude Rule 404(b) evidence, yet he does not identify what evidence he believes constitutes Rule 404(b) evidence and the government did not offer or introduce Rule 404(b) evidence at

trial concerning prior acts of Mr. Goodwin. He contends that his trial counsel failed to seek a plea agreement or engage in plea negotiations, but concedes that his counsel discussed with him the possibility of a "lesser sentence" if he agreed to provide the government with a truthful proffer.[4]

Mr. Goodwin also contends that his trial counsel failed to protect his Speedy Trial rights, but ignores the fact that this case was designated as a complex case such that there was no basis to assert a Speedy Trial violation. He complains that his trial counsel failed to move for a mistrial when Mr. Wesley pled guilty to the conspiracy charge after the jury was impaneled or, at a minimum, should have sought a limiting instruction to the jury that they could not consider Mr. Wesley's plea of guilty as evidence of Mr. Goodwin's guilt. In fact, the court gave a limiting instruction to that effect (Doc. 800, Instruction No. 5) and would not have granted a motion for mistrial on that basis in any event. *See United States v. Massey*, 48 F.3d 1560, 1569-70 (10th Cir. 1995) (denial of motion for mistrial not abuse of discretion when co-conspirator entered guilty plea during trial and court advised jury of guilty plea; cautionary instruction eliminated any prejudice to remaining defendants). He asserts that his counsel should have moved for mistrial when the government, in its closing argument, allegedly told the jury that it must find Mr. Goodwin guilty because the government could not afford the expense of another trial. Although Mr. Goodwin has not cited to a specific page or portion of the closing argument in which the alleged statement occurred, the court has read the transcript of the government's portion of closing arguments and the statement that Mr. Goodwin alleges was made by the

---

[4] Moreover, Mr. Goodwin's continued insistence that he is innocent of any conspiracy and was merely a customer of certain members of the conspiracy cuts against any argument that he would have accepted a plea agreement if his counsel had pressed for one.

6

government is simply not there. Moreover, based on its experience with counsel for the government and its recollection of the trial in this case, the court is confident that no such statement was made.

Three additional claims asserted by Mr. Goodwin may be denied without elaboration based on Mr. Goodwin's inability to establish prejudice or his assertion of inaccurate facts. Mr. Goodwin claims that his trial counsel was ineffective by failing to object to the submission of an aiding and abetting instruction on the conspiracy charge such that the jury was improperly permitted to convict him on that theory. His counsel, however, vigorously objected to the submission of that instruction (Trial Tr. at 2635-42; 2657), resulting in a lengthy discussion of the issue and additional research by the government, and ultimately persuaded the court to make certain revisions to the court's proposed instruction. Moreover, the Tenth Circuit has affirmed on appeal that the particular instruction submitted to the jury was proper. *See United States v. Goodwin*, 433 Fed. Appx. 636, 640 (10th Cir. 2011).

Mr. Goodwin claims that his counsel did not adequately persuade the court or the jury that Mr. Goodwin was not a member of the conspiracy and did not adequately persuade the court that Mr. Goodwin was not a career offender. Contrary to his assertions, Mr. Goodwin's trial counsel made concerted efforts to convince the jury and the court that Mr. Goodwin was merely a customer of certain members of the conspiracy and was not himself a member of that conspiracy. These efforts were made in the face of considerable evidence demonstrating that Mr. Goodwin bought and sold drugs in an interdependent distribution scheme. The fact that his counsel's arguments were unsuccessful does not render his counsel's performance constitutionally deficient. *United States v. Mullane*, 226 Fed. Appx. 810, 813 (10th Cir. 2007)

(unsuccessful attempts by counsel to persuade court to impose lower sentence does not suggest performance deficient). Similarly, the fact that Mr. Goodwin's counsel failed to convince the court that Mr. Goodwin was not a career offender (the court presumes Mr. Goodwin, by "career offender," means the enhancement under § 841(b)(1)(A)) does not render his performance constitutionally deficient. And, as explained above, Mr. Goodwin was, in fact, properly subject to an enhanced sentence based on his two prior felony drug convictions.

While the court denies Mr. Goodwin's remaining ineffective assistance claims, the denial of those claims requires more explanation than Mr. Goodwin's other claims. Mr. Goodwin asserts that his trial counsel failed to object to jury instructions that permitted an amendment or variance to the indictment such that he was convicted for an offense that was never charged. Without any additional detail from Mr. Goodwin, the court surmises that he is referring to the court's inclusion of the phrase "crack or cocaine" in the conspiracy instructions as opposed to "crack and cocaine," consistent with the argument made by Mr. Foy's counsel that the court's language varied from the language used in the indictment and impermissibly broadened the scope of the indictment because Mr. Foy had no knowledge of any distribution of crack cocaine. Although Mr. Goodwin's counsel did not assert an objection, the objection was raised (albeit by Mr. Foy's counsel) and it was denied. Any objection raised by Mr. Goodwin's counsel would have been denied as well, as evidence was presented to the jury that Mr. Goodwin purchased crack cocaine on several occasions.

Mr. Goodwin also asserts that his Sixth Amendment rights were violated because his trial counsel failed to make a motion for severance. Although it reviewed the issue only for plain error, the Tenth Circuit held in the context of Mr. Goodwin's appeal that Mr. Goodwin was not

prejudiced by a joint trial in this case. *United States v. Goodwin*, 433 Fed. Appx. 636, 641 (10th Cir. 2011). He raises the same arguments here that the Circuit flatly rejected—that he was prejudiced because of the disparity between the minimal incriminating evidence against him and the overwhelming incriminating evidence against his co-defendants. The Circuit reiterated the "insuperable rule" that "a defendant cannot obtain severance simply by showing that the evidence against a co-defendant is more damaging than the evidence against himself." *Id*. This is particularly true in light of the presumption in a conspiracy trial that coconspirators charged together should be tried together. *Id*. (quoting *United States v. Wardell*, 591 F.3d 1279, 1300 (10th Cir. 2009)). At the close of the government's case, the court, on its own initiative, assessed whether the motions to sever that had been filed had been imprudently denied by the court in light of the way in which the evidence unfolded at trial. In doing so, the court concluded that none of the defendants—including those who had not filed motions—had been unfairly prejudiced by any potential spillover effect. Mr. Goodwin, then, can demonstrate no prejudice as a result of his trial counsel's failure to file a motion to sever because any such motion undoubtedly would have been denied.

Mr. Goodwin contends that his trial counsel's performance was also deficient because his counsel failed to challenge the use of "crack" cocaine in determining Mr. Goodwin's base offense level because, according to Mr. Goodwin, he only purchased powder cocaine (although he concedes he "may have converted the powder cocaine" into crack after purchasing it). This argument is rejected because Mr. Goodwin cannot establish prejudice. First, there was evidence presented to the jury that Mr. Goodwin purchased crack cocaine on several occasions. Second, even assuming that Mr. Goodwin's counsel should have challenged the calculation of Mr.

9

Goodwin's base offense level, there is no prejudice because the court did not sentence Mr. Goodwin under the guidelines—it sentenced Mr. Goodwin to the statutory mandatory minimum life sentence under § 841(b)(1)(A). *See United States v. Apperson*, 441 F.3d 1162, 1213 (10th Cir. 2006) (holding moot a defendant's challenges to the calculation of his offense level and sentencing range under the Federal Sentencing Guidelines, since regardless of whether the district court erred in those calculations, the defendant was still subject to a statutory mandatory minimum life sentence under 21 U.S.C. § 841(b)(1)(A)).

Next Mr. Goodwin complains that his trial counsel, in violation of Mr. Goodwin's Sixth Amendment rights, failed to object to allowing the jury to convict Mr. Goodwin on the conspiracy charge based solely on an "uncorroborated confession." Specifically, Mr. Goodwin contends that his conviction was based solely on Officer Timothy McCue's testimony that Mr. Goodwin had admitted to him during an interview after he voluntarily surrendered that he had purchased cocaine from Mr. Grigsby on 6 to 8 occasions. Mr. Goodwin cannot establish that his trial counsel was ineffective in this respect as Mr. Goodwin's conviction was based upon substantial evidence of his involvement in the conspiracy—not merely an "uncorroborated confession" to Officer McCue. To begin, Mr. Goodwin's admission was made not only to Officer McCue, but also Officer Jones, who also testified as to Mr. Goodwin's admission. The jury also heard numerous phone calls between Mr. Goodwin and Mr. Grigsby and between Mr. Goodwin and Mr. Wesley in which Mr. Goodwin discusses purchasing cocaine. In addition, Mr. Grisgsby and Mr.Ringgold testified that they sold cocaine to Mr. Goodwin. Substantial evidence, then, supported the jury's conclusion that Mr. Goodwin was integral to the drug

conspiracy and the jury did not convict Mr. Goodwin solely on the basis of Mr. Goodwin's admission to Officer McCue.[5]

Mr. Goodwin also challenges his trial counsel's purported failure to provide him with a copy of the recorded phone calls (or permit him to listen to the recordings) until just days prior to trial. According to Mr. Goodwin, if he had been provided access to the phone calls earlier in the process, then he would have been better informed as to whether to take a plea or proceed to trial. Instead, Mr. Goodwin asserts, he was "forced to go into the trial . . . blind to the government's proof." The court denies this claim as the facts do not support Mr. Goodwin's contention that he did not hear the recordings until the eve of trial and, regardless, the court discerns no prejudice to Mr. Goodwin. More than two months prior to trial, the court held a suppression hearing on Mr. Goodwin's motion to suppress his statements to Officers Jones and McCue in light of an alleged *Miranda* violation. During that hearing, Mr. Goodwin was asked whether it was his testimony that the phone calls that the government intercepted "where you're heard talking to Henry Grigsby" about drugs concerned marijuana. In responding to the question about the intercepted phone calls, Mr. Goodwin did not indicate that he had not heard the calls or that he had no knowledge of the substance of those calls. Rather, Mr. Goodwin testified that the intercepted phone calls concerned the purchase of marijuana. This testimony

---

[5] Mr. Goodwin also contends that he has "newly discovered" evidence that Office McCue, after Mr. Goodwin's trial, was terminated for misconduct and that, as a result, his credibility has been called into question. He does not submit any admissible evidence to support this assertion. In any event, because Officer McCue's testimony merely corroborated the testimony of other witnesses, there is no reason to believe that any evidence attacking the credibility of Officer McCue, assuming the admissibility of such evidence, would have had any bearing on the jury's verdict. Moreover, to the extent Mr. Goodwin asks the court to "reconsider" its ruling that Mr. Goodwin's *Miranda* rights were not violated by Officer McCue and Officer Jones, the court declines to do so as it remains convinced that Mr. Goodwin's rights were not violated.

11

demonstrates to the court that Mr. Goodwin had knowledge of the contents of the intercepted phone calls at least two months prior to trial. The court also rejects Mr. Goodwin's suggestion that earlier access to the phone calls would have permitted him to make a more informed decision about whether to take a plea or proceed to trial. There is simply no indication that Mr. Goodwin—who still steadfastly maintains his innocence—would have pursued or accepted a plea agreement.

Mr. Goodwin's last claim concerning his trial counsel is that his counsel, if not incompetent, must have been operating under a conflict of interest. According to Mr. Goodwin, there is simply no other explanation for his counsel's allegedly substandard performance. The claim is entirely conclusory and Mr. Goodwin does not direct the court to any instance in which his trial counsel put his own interests before Mr. Goodwin's interests. There is simply no evidence in the record supporting the idea that Mr. Goodwin's counsel had a conflict of interest in this case. The claim is denied.

Finally, Mr. Goodwin asserts that his appellate counsel was ineffective by failing to raise two issues on appeal: whether the government complied with the Federal Wiretap Act when it intercepted telephone conversations without properly establishing authorization in its wiretap applications; and whether the district court should have excluded the wiretap recordings of conversations between Mr. Goodwin and Mr. Grisgby and between Mr. Goodwin and Mr. Wesley because the government did not establish that it was Mr. Goodwin's voice on those recordings. This claim is denied because Mr. Goodwin cannot establish that he suffered any prejudice as a result of his appellate counsel's failure to raise these issues on appeal.

Mr. Goodwin's contention concerning the validity of the wiretap application was raised in the appeal of two of his codefendants, Shevel Foy and Latysha Temple. The Tenth Circuit rejected that argument and, because Mr. Goodwin's argument targets the same wiretap applications as those at issue in *Foy* and *Temple*, the Circuit would have rejected the argument in Mr. Goodwin's case. *See United States v. Foy*, 641 F.3d 455 (10th Cir. 2011) (affirming district court's refusal to suppress wiretap evidence where officers' reference to an outdated AG order for authorization was merely a technical defect which did not subvert the primary purpose of the wiretap statute's authorization requirement); *United States v. Temple*, 433 Fed. Appx. 630, 632-33 (10th Cir. 2011) (adopting analysis from *Foy* and rejecting argument that wiretap evidence should have been suppressed because the officers failed to properly establish authorization in their wiretap applications). With respect to Mr. Goodwin's complaint that the government did not establish that it was his voice on the wiretap recordings, there is similarly no prejudice to Mr. Goodwin because additional, substantial evidence connected Mr. Goodwin to the specific telephone calls, including evidence that Mr. Goodwin was found in possession of the phone which initiated the calls to both Mr. Grigsby and Mr. Wesley. In any event, as indicated by the Circuit on appeal, Officer Jones identified Mr. Goodwin's voice on four phone calls in which Mr. Goodwin sought to purchase drugs from Mr. Grigsby or Mr. Wesley. *United States v. Goodwin*, 433 Fed. Appx. 636, 638 (10th Cir. 2011).[6] In addition, both Mr. Jones and

---

[6] Mr. Goodwin also asserts that his trial counsel was ineffective by failing to object at trial to the validity of the wiretap applications and the lack of foundation as to Mr. Goodwin's voice on the wiretap recordings. For the reasons the court denies the claim with respect to appellate counsel, the court denies the claim with respect to trial counsel. To the extent Mr. Goodwin further contends that, in the absence of the wiretap recordings, there was "no evidence" presented at trial to convict him on the conspiracy charge, the court is not persuaded. Substantial evidence of

13

Mr. Grigsby testified that they were familiar with Mr. Goodwin's voice from firsthand contact with Mr. Goodwin and they both identified his voice on those phone calls.

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)). With respect to Mr. Goodwin's challenge to the two prior convictions used to enhance his sentence under § 851, the court lacks the authority to grant a certificate of appealability because that claim raises only non-constitutional sentencing issues. *United States v. Trinkle*, 2013 WL 363480, at *1 (10th Cir. Jan. 31, 2013). With respect to the ineffective assistance claims denied above, for the same reasons stated, Mr. Goodwin has not made a substantial showing of the denial of a constitutional right; the court therefore denies a certificate of appealability with respect to those issues.

---

Mr. Goodwin's guilty was presented wholly apart from the recordings, including testimony from Officers Jones and McCue that Mr. Goodwin admitted to purchasing cocaine from Mr. Grigsby on 6 to 8 occasions; testimony from those officers that the amounts Mr. Goodwin admitted to purchasing were consistent with distribution as opposed personal use; testimony from Mr. Grigsby that he sold cocaine to Mr. Goodwin and that, based on the quantities, he assumed Mr. Goodwin was selling the cocaine; and testimony from another co-defendant, Keenan Ringgold, that Mr. Goodwin purchased cocaine from him on 4 to 5 occasions in amounts consistent with distribution.

**Motion to Reduce Sentence**

Mr. Goodwin's second motion, made pursuant to 18 U.S.C. § 3582(c), asserts that he is entitled to a reduced sentence by virtue of Amendment 709 which, according to Mr. Goodwin, requires that his two prior drug convictions be counted as a single sentence for purposes of determining his criminal history category. Federal courts, in general, lack jurisdiction to reduce a term of imprisonment once it has been imposed. *Freeman v. United States*, ––– U.S. ––––, 131 S.Ct. 2685, 2690 (2011). "A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization." *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997). Under limited circumstances, modification of a sentence is possible under 18 U.S.C. § 3582(c). That provision states that "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" may be eligible for a reduction, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

Mr. Goodwin's motion is denied. Amendment 709 was effective on November 1, 2007 and, thus, was in effect and applied at the time of Mr. Goodwin's sentencing in October 2009. Thus, it is not an amendment that reduced a range "subsequent to a defendant's sentencing" as required by § 3582(c). *United States v. Rabieh*, 384 Fed. Appx. 781, 783 (10th Cir. 2010) (affirming denial of § 3582(c) motion where Amendments became effective before the defendant's sentencing such that they did not "subsequently" lower his sentencing range); *United States v. Dejear*, 377 Fed. Appx. 813, 814 (10th Cir. 2010) (affirming denial of § 3582(c) motion where Amendment 709 became effective 13 days prior to sentencing and, thus,

did not subsequently modify the Guidelines range under which the defendant was sentenced). Moreover, Mr. Goodwin's sentence was not "based on a sentencing range" but, instead, was based on a mandatory statutory minimum under 21 U.S.C. §§ 841(b)(1)(A) and 851.[7] The court, then, would have no jurisdiction to reduce Mr. Goodwin's sentence in any event. *United States v. Wilson*, 421 Fed. Appx. 822, 824 (10th Cir. 2010) (district court lacks authority to reduce sentence under § 3582(c) when sentence reflected statutory mandatory minimum under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii) and 851).

**Motion for Intake Records**

In his third motion, Mr. Goodwin requests a "copy" of an "interview conducted by court personnel" at the time he surrendered to the custody of the United States Marshal's Office in February 2008 as well "any other interrogation reports you may have on record" pertaining to Mr. Goodwin. The government represents in its response that Mr. Goodwin was interviewed by a United States Probation Officer at that time, who prepared a Pretrial Services Report. In his reply, Mr. Goodwin confirms that he is seeking the Pretrial Services Report for material relevant to his § 2255 petition. Specifically, Mr. Goodwin contends that the government, at trial, told the jury that Mr. Goodwin told the probation officer during that interview that he sold crack cocaine. He does not identify which witness allegedly testified to the alleged admission. Mr. Goodwin asserts that he admitted during the interview that he sold marijuana to supplement his

---

[7] To the extent Mr. Goodwin also asserts in his § 3582(c) motion that his sentence should be vacated or modified because one of his underlying convictions is not a qualifying offense under § 841(b)(1)(A), he is not entitled to relief under § 3582(c) because he was not sentenced "to a term of imprisonment based on a sentencing range that has been subsequently lowered . . ."

16

income and support his family, but never admitted to selling crack cocaine for that purpose. According to Mr. Goodwin, then, the Pretrial Services Report will demonstrate the falsity of the government's evidence at trial.

The motion is denied. Mr. Goodwin does not direct the court to any specific place in the record where the government presented the evidence alleged by Mr. Goodwin and the court has no recollection of such evidence. The government did not call any witnesses from the United States Probation Office and no other witness called would have been permitted to testify about an alleged admission made by Mr. Goodwin to a probation officer in connection with the Pretrial Services Report. Mr. Goodwin, then, has not established that the Pretrial Services Report that he seeks would help him advance any issues pertinent to his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Goodwin's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 1480) is denied; Mr. Goodwin's motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(2) (doc. 1470) is denied; and Mr. Goodwin's motion for intake records (doc. 1542) is denied.

**IT IS SO ORDERED.**

Dated this 2nd day of May, 2013, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge